| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 4:13-CR-14(1) |
| | § | |
| LORENZO MAGANA | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Lorenzo Magana's ("Magana") Emergency Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (#711). The Government filed a response in opposition (#716). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.   Background

On September 11, 2013, a grand jury in the Eastern District of Texas returned a Superseding Indictment against Magana charging him and 18 others with Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 846, from September 2010 until the date of the indictment.  On January 5, 2015, Magana entered a plea of guilty to the offense pursuant to a non-binding plea agreement.  On July 1, 2015, the court sentenced Magana to 292 months' imprisonment, followed by a 5-year term of supervised release. The court reduced his sentence to 219 months' imprisonment on October 13, 2015.  Subsequently, Magana appealed his conviction and sentence, which was dismissed by the United States Court of Appeals for the Fifth Circuit on January 8, 2020.  Magana is currently housed at Federal

Correctional Institution Oakdale II, located in Oakdale, Louisiana ("FCI Oakdale II"). Magana's projected release date is October 16, 2028.

II.     Analysis

On December 21, 2018, the President signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, No. 20-60473, 2020 WL 5249369, at *1 (5th Cir. Sept. 3, 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c)

by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 2020 WL 5249369, at *1 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 2020 WL 5249369, at *1 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court. Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3,

2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

In this situation, it appears that Magana has exhausted his administrative remedies. Attached to Magana's motion is his written request to the warden of FCI Oakdale II, dated June 9, 2020, asking that he be recommended for compassionate release, contending that he is a vulnerable individual according to the CDC (Centers for Disease Control and Prevention). Also attached is a response from Warden S. Ma'at, dated July 23, 2020, denying the request, finding that Magana did not meet the criteria for compassionate release at that time. Warden Ma'at explained: "According to the Clinical Director, you have not been diagnosed with a terminal, incurable disease with a life expectancy of eighteen months or less. You do not suffer from a chronic or serious medical condition related to the aging process and the [BOP] can provide conventional treatment to improve your condition." Probation and the Government concur that Magana requested compassionate release in June 2020 and that the warden denied his request on July 23, 2020. Although the court finds that Magana complied with the exhaustion requirement before filing the current motion, nothing in his motion indicates that extraordinary and compelling reasons exist to reduce his sentence to time served and release him from confinement.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be

considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

As grounds for relief set forth in his motion, Magana states that he suffers from hypertension, diabetes II, high cholesterol, and obesity, which he contends place him at a higher risk for severe illness if he contracts COVID-19. The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

In the case at bar, Magana, age 46, attaches limited medical records in support of his health claims. A review of Magana's Presentence Investigation Report ("PSR"), prepared on March 28, 2013, reveals that when questioned by Probation about his physical condition, he reported that he was being treated for diabetes, hypertension, asthma, and stomach ulcers. Probation further noted that, according to a booking report obtained from the United States Marshals Service, he also had an inflamed prostate. In addition, Probation related that Magana was 5 feet 6 inches tall and weighed 250 pounds at the time. According to Magana's most recent medical records from the BOP, dated August 18, 2020, he has been diagnosed with diabetes type II, hypertension (benign essential), dermatophytosis (a skin condition), and hyperlipidemia. The records reflect that he has been prescribed medication to treat all of these disorders, including Metformin for diabetes, Lisinopril for hypertension, Atorvastatin for hyperlipidemia, Clotrimazole cream for the skin condition, Omeprazole for esophageal reflux, and aspirin for diabetes, hypertension, and hyperlipidemia. Jose Crespo, M.D., noted on August 18, 2020, that Magana's diabetes, hypertension, and hyperlipidemia were well controlled. In fact, his blood pressure was recorded as 116/75, reflecting a normal blood pressure reading. On March 18, 2020, Magana had a blood pressure reading of 124/80, which was only slightly elevated. He also measured 66 inches tall and weighed 255 pounds, making his Body Mass Index 41.2, well above 30, the threshold for obesity.

A medical record dated April 7, 2020, likewise, describes Magana as obese and indicates that he is being counseled about weight loss and his diet, noting that he was advised to avoid spicy/fatty foods. Yet, the same document listed his commissary purchases for the last month as including hot-n-spicy vegetable soup, ice cream, refried beans, and hot pork skins. BOP records attached to the Government's response disclose that Magana is classified as a Medical Care Level 2 inmate (stable, chronic care). BOP's Clinical Practice Guidance explains: Care Level 2 inmates "are stable outpatients who require clinical evaluations monthly to every 6 months; their medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring; and enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." Hence, Magana's health concerns, aside from his obesity, appear to be well-controlled by monitoring, testing, and medication. The medical providers are also providing him counseling regarding his obesity and recommending dietary measures to reduce his weight, but he does not appear to be heeding their advice.

Thus, Magana's medical condition does not meet the criteria for compassionate release listed in the guidelines. His reported afflictions are not terminal (with an end of life trajectory within 18 months), nor do they substantially diminish his ability to provide self-care. BOP records indicate that Magana has no medical restrictions, is assigned regular duty work, is cleared for food service, and is housed in general population. Furthermore, his suffering from diabetes, hypertension, lipidemia, and obesity evidently did not hamper or prevent him from heading a multi-state drug trafficking organization over a three-year period from 2010 until his arrest in 2013. Therefore, Magana has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence. Moreover,

"compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).  Where, as here, the defendant has engaged in "severe" criminal conduct and has a significant criminal history, the district court has discretion to deny compassionate release after weighing the evidence.  *Id.* at 693-94.

Magana's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13 cmt. n.1(D).  Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present.  *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

Here, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Magana for any "other" reason.

In exercising its discretion, the court also finds that no extraordinary and compelling reasons exist in relation to Magana's situation. As of October 3, 2020, the figures available at www.bop.gov list 1 inmate (out of a total population of 847) and 9 staff members at FCI Oakdale II as currently positive for COVID-19. The figures also indicate that 9 inmates and 6 staff members have recovered, while 1 inmate at the facility has succumbed to the disease. Therefore, although Magana expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat him, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances

warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19). Moreover, it appears that the facility where Magana is housed is handling the outbreak appropriately and providing adequate medical care. Thus, Magana has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to release him from prison.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at 693-94. The nature and circumstances of Magana's offense of conviction entail his serving as the leader of a drug trafficking organization based in Atlanta, Georgia, that was affiliated with the LCT (Los Caballeros Templar) drug cartel based in Michoacán, Mexico. According to the Superseding Indictment, members of the organization facilitated the importation of methamphetamine from Mexico into the Southern District of Texas, the transportation of the methamphetamine through the Eastern District of Texas, the distribution of methamphetamine in the Northern District of Georgia and other locations through the United States, the transfer of proceeds derived from the drug trafficking from the United States to Mexico, and the execution of financial transactions that were designed to conceal the nature, source, ownership, and control of the proceeds derived from the drug trafficking. The PSR reveals that Magana was responsible for coordinating shipments of liquid methamphetamine, converting and distributing shipments of liquid methamphetamine,

collecting drug proceeds, and returning the drug proceeds to Mexico and other locations. Agents discovered a firearm, liquid methamphetamine conversion paraphernalia, and methamphetamine during a search of his residence. Magana was ultimately found responsible for a total of 1,580.5 grams of methamphetamine and 1.5 grams of d-methamphetamine.

Magana's criminal history begins at age 17 and includes prior convictions for transport/sell narcotic controlled substance (5), possession of a narcotic controlled substance-cocaine, using or being under the influence of a narcotic/controlled substance-cocaine, driving while intoxicated, and illegal entry. In fact, as Probation pointed out in the PSR, Magana "is an illegal alien" who "has been deported to Mexico on multiple occasions" and therefore, is subject to removal. Upon his release from prison, he is to be surrendered to immigration authorities for deportation proceedings. Magana also failed to comply with previous terms of probation and used multiple aliases to conceal his criminal activities. Magana reported a history of substance abuse from age 16, including abusing alcohol, cocaine, and methamphetamine, smoking 3 to 4 grams of methamphetamine weekly between 2009 and his arrest in 2013, and admitting to Probation that he was dependent on methamphetamine. Moreover, granting Magana early release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the Fifth Circuit found that the district court did not abuse its discretion in denying compassionate release to a defendant due to the defendant's not yet having served a sufficient portion of his sentence. *Id.* at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness

11

of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id.* In the instant case, releasing Magana after he has served only 7 years and 5 months, less than half, of his 18-year sentence would similarly minimize the impact of his crime and the seriousness of his offense. Under the circumstances, the court cannot conclude that Magana would not pose a danger to the safety of any other person or to the community, if released from prison at this juncture.

Furthermore, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020). The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. To date, the BOP has placed 7,799 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *Ambriz v. United States*, No. 4:20-CV-568-P, 2020 WL 3066861, at *2 (N.D.

Tex. June 5, 2020); *United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Magana's track record is similarly a poor one.

In short, Magana has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States*

13

*v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 2020 WL 1940570, at *4-5 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 2020 WL 1940570, at *5.

III.  Conclusion

In accordance with the foregoing analysis, Magana's Emergency Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (#711) is DENIED.

SIGNED at Beaumont, Texas, this 5th day of October, 2020.

*[signature: Marcia A. Crone]*

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE